UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARCUS D. MAYS #218101,

        Plaintiff,

v.

UNKNOWN PERALA,

        Defendant.

_____/

Case No. 2:17-cv-00095

Hon. Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

### Introduction

This is a civil rights action brought by state prisoner Marcus D. Mays pursuant to 42 U.S.C. § 1983. In his complaint, Mays alleges that while he was detained at Baraga Correctional Facility (AMF) in Baraga, Michigan, Corrections Officer Joseph Perala: (1) utilized excessive force against him, in violation of the Eighth Amendment, (2) acted with deliberate indifferent towards his serious medical needs, also in violation of the Eighth Amendment, and (3) retaliated against him for filing federal lawsuits, in violation of the First Amendment.

This Report and Recommendation addresses Defendant Perala's motion for summary judgment as to the above claims. Based on a review of the materials submitted by the parties, the undersigned concludes (1) that the factual findings reached by the Hearing Officer in Mays's Class I Misconduct hearing preclude Mays's Eighth Amendment excessive force claim, (2) that there is no genuine issue of

material fact relating to the subjective component of Mays's Eighth Amendment deliberate indifference claim, and (3) as a result, that there is no a genuine issue of material fact relating to Mays's retaliation claims. Accordingly, the undersigned respectfully recommends that the Court grant Defendant Perala's motion for summary judgment.

## Procedural History

Mays filed his complaint on May 25, 2017. He asserted claims against Defendants Perala, Corrigan, and LaPlante. (ECF No. 1.) On November 22, 2017, this Court issued an order in which it found that Mays stated non-frivolous claims against Defendants Perala and Corrigan, but failed to state a claim against Defendant LaPlante. Thus, the Court dismissed Defendant LaPlante from the case. (ECF No. 10.)

On February 28, 2018, Defendants filed a motion for partial summary judgment asserting that Mays failed to exhaust his administrative remedies. (ECF No. 15.) On May 29, 2018, Judge Greeley issued a Report and Recommendation in which he recommended that the Court deny Defendants' motion for partial summary judgment with regard to Mays's claims against Defendant Perala, but grant Defendants' motion for partial summary judgment with regard to Mays's claims against Defendant Corrigan. (ECF No. 33, PageID.315-16.) This Court adopted Judge Greeley's Report and Recommendation in an order issued on June 21, 2018, thereby dismissing Defendant Corrigan from the case. (ECF No. 34.)

On October 3, 2018, the last remaining defendant (Defendant Perala) filed another motion for summary judgment. (ECF No. 46.) Mays filed his response to Defendant's Motion for Summary Judgment on November 2, 2018 (ECF No. 54) and Defendant replied (ECF No. 56) on November 16, 2018.

**Factual Allegations**

In his complaint, Mays alleges that, during his confinement at AMF, Defendant Perala utilized excessive force against him and acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Mays further alleges that these Eighth Amendment violations were committed in order to retaliate against him for filing federal lawsuits against Defendant Perala's colleagues, in violation of the First Amendment. Finally, Mays claims that, in order to further retaliate against him, Defendant Perala filed a false Class I misconduct accusing Mays of threatening behavior.

Specifically, Mays claims that, on October 14, 2016, Defendant Perala asked Mays if he was going to sign off on a lawsuit that he had filed against Defendant's "buddy" Kevin Hemmila. (ECF No. 1, PageID.5.) When Mays informed Perala that he would not be signing off on the lawsuit, Defendant Perala allegedly slammed Mays's arm in the food tray slot of a cell door and threatened to reduce Mays's incentive stage to stage one, deny Mays his food trays and indigent store order, and "bury [Mays's] ass in segregation with falsified tickets." (*Id.*) Mays says that Defendant Perala then filed a false Class I Misconduct Report against him for threatening behavior.

3

Mays says that later that day, he informed health care staff that Perala had shut his arm in the food tray slot, and that he was experiencing pain as a result. (*Id.* at PageID.5.) According to Mays, the staff member said he was fine, and that she would not provide any treatment because he had filed a lawsuit against one of her colleagues in health care. (*Id.*)

Mays alleges that, on October 15, 2016, he again requested medical attention for his arm, but health care staff continued to refuse him treatment. (*Id.*)

Mays claims that, on October 19, 2016, he informed Defendant Perala that he was having a seizure while Defendant Perala was conducting rounds. (*Id.* at PageID.6.) Mays further claims that, instead of helping, Defendant Perala responded, "You f—ing n—, I hope you die." (*Id.*) Mays says that he then blacked out. Mays asserts that when he awoke, Defendant Perala was conducting rounds once more. (*Id.*) When Mays asked Defendant Perala if he'd gotten a doctor, Defendant Perala allegedly responded by stating, "F— no. You ain't dead yet . . .?" (*Id.*)

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### Eighth Amendment Excessive Force Claim

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous", nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

To establish an Eighth Amendment claim, a plaintiff must satisfy both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). "The objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson*, 501 U.S. at 298). "The subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d at 383.

While all Eighth Amendment claims involve an objective and a subjective component, the objective component is contextual and therefore varies depending on

5

the claim asserted. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The degree of harm necessary to satisfy the objective component depends on "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). When prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. Thus, while the extent of an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation based on excessive force has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

The proper inquiry for an Eighth Amendment claim of excessive force is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Factors that are typically considered in this determination include: (1) the relationship between the need for force and the amount of force that was used, (2) the extent of any safety threat to staff or inmates, and (3) any efforts made to temper the severity of a forceful response. *Id.* at 321.

As explained above, Mays alleges that, after telling Defendant Perala that he would not drop a lawsuit against another prison official, Defendant Perala utilized excessive force against him by slamming his arm in the food tray slot. The undersigned recognizes that this use of force, if it occurred, would appear to lack any penological justification.

6

Defendant Perala counters by asserting (1) that this incident never occurred, (2) that the factual findings of the Hearing Officer in Mays's Class I misconduct hearing preclude Mays's claim of excessive force, and (3) that even if the incident did occur, Mays cannot satisfy the objective component of his excessive force claim because his injury was *de minimis*. (ECF No. 47, PageID.386-390.)

The undersigned agrees that the Hearing Officer's findings in Mays's Class I Misconduct hearing preclude Plaintiff's excessive force claim. The Sixth Circuit test for determining whether factual findings made within a Class I misconduct hearing are entitled to preclusive effect was established in *Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013) (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)). Pursuant to *Peterson*, facts found during a Michigan prison hearing are given preclusive effect when (1) the state agency, in this case the Hearing Officer on behalf of the agency, was acting in a "judicial capacity," (2) the hearing officer resolved the disputed issue of fact that was resolved was properly before him or her, (3) the prisoner had a sufficient opportunity to litigate the issue, and (4) the findings of fact would be given preclusive effect by the Michigan courts. *Id.* at 912-14. The Sixth Circuit in *Peterson* determined that a major misconduct hearing (*i.e.*, a Class I Misconduct Hearing) satisfies the first and last criteria as long as the other two criteria are satisfied. *Id.*

The portions of the Misconduct Hearing Report that discuss the evidence and reasons for finding Mays guilty of threatening behavior are shown below.

7

> Case 2:17-cv-00095-GJQ-MV   ECF No. 47-9 filed 09/19/18   PageID.524   Page 1 of 7
>
> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **CLASS I MISCONDUCT HEARING REPORT**                                    CSJ-240B Rev. 10/10
>
> | Prisoner | Prisoner Name | Facility Code | Lock | Violation Date |
> |---|---|---|---|---|
> | 218101 | Mays | AMF | 3-134 | 10/14/2016 |
>
> Charge(s): **012: Threatening Behavior***
>
> If Charge Changed by Hearing Officer: [blank]
>
> Plea: ☐ Guilty   ☒ Not Guilty
>
> Misconduct Report Read to and Discussed with Prisoner  ☒ (check if applies)
> Hearing Investigation Read to and Discussed with Prisoner  ☒ (check if applies)
> No Hearing Investigation Requested  ☐ (check if applies)
>
> **EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**
>
> AMF misconduct scheduled for hearing on prisoner at AMF with Hearing Officer at LMF through tele-video hearing.
> PRISONER'S APPEARANCE: Prisoner appeared for his hearing.
> EVIDENCE IN RECORD: (Unless otherwise noted, each listed document consists of one page.) Misconduct report, investigator note, Hearing Investigation Report and prisoner's statement read to the prisoner.
>
> SEE PAGE TWO
>
> *PD 03.03.105A defines this charge as "Words, actions, or other behavior which expresses an intent to injure or physically abuse another person. Such misconduct includes attempted assault and battery."
>
> **REASONS FOR FINDINGS**
>
> On 10/14/16 the prisoner stated to the officer, "I'm gonna fuck you up, when I see you in GP, bitch. Read my file. I am a C/O killer." This expressed the intent to physically assault the officer. Prisoner intended to cause fear of physical harm in the officer as the prisoner directed his comment to the officer when the officer was picking up trays. Prisoner claims that the officer fabricated this misconduct report because of a lawsuit that he filed against another officer. Prisoner is not believed. First, prisoner did not present his claims in a credible manner at the hearing. Prisoner did not carry the conviction of truth in his voice. Second, grievances and lawsuits are not uncommon in a level five segregation unit. It seems unlikely that the officer would know, much less care, about a lawsuit filed against another officer. Third, if the officer was of the mind to fabricate a misconduct report against the prisoner, it would make more sense to do so before he gave the prisoner his food tray – not after – so he could justify not giving the prisoner his tray. The fact that the threat was made when food trays were being picked up from the last meal of the day is far more consistent with the prisoner actually making the threat than not. (Prisoners seldom threat staff before they get their meal trays.) Reporting staff member factual and is credible as to what occurred. Charge upheld.

(ECF No. 47-9, PageID.524.)

> Case 2:17-cv-00095-GJQ-MV   ECF No. 47-9 filed 09/19/18   PageID.525   Page 2 of 7
>
> MICHIGAN DEPARTMENT OF CORRECTIONS                                    4835-4243 12/90  CSJ-240D
>
> **MAJOR MISCONDUCT**  HEARING REPORT – Continuation Page No. 2
> (Type of Hearing)
>
> | Prisoner Number | Prisoner Name | Institution | Violation/Notice Date |
> |---|---|---|---|
> | 218101 | Mays | AMF | 10/14/16 |
>
> **EVIDENCE / STATEMENTS IN ADDITION TO MISCONDUCT REPORT** Continued from Page One
>
> PRISONER'S TESTIMONY AT HEARING: At the hearing the prisoner stated, "Not guilty." "I don't know this guy. He threatened me on a lawsuit that I have on Kevin Hemmila and 12 others." "If I was going to do something like that, I wouldn't even tell him." The officer asked him if he was going sign off on the lawsuit and then the officer slammed his arm in the food slot and told him he was going to fuck him over. He has no reason to threaten the officer. He doesn't even know him. He, Mays, just got here. The officer has been causing problems with other inmates. "I am going to file a lawsuit. I'm trying to lay back. I'm not trying to cause any problems". He was down at IMax and they sent him back up here. He doesn't know why they did that as he knows how the officers are up at AMF.  Prisoner had no other comment when asked - stated, "That's it." Prisoner informed of the decision and sanction prior to leaving the hearings room.

(*Id.* at PageID.525.)

The hearing report indicates that the Hearing Officer acted in a judicial capacity by considering evidence entered into the record by Mays and Defendant Perala, holding a formal hearing in which the parties were permitted to argue their accounts of the incident, and "issu[ing] a written final decision that . . . could have been subject to direct review in state court." 714 F.3d at 912. Because the hearing was for a Class I misconduct, Mays was provided with the same "raft of judicial-type protections," as was the prisoner in *Peterson*, including, but not limited to, a hearing without undue delay, reasonable notice, and a right to appeal. *Id*. at 912-913.

Second, the disputed issue of fact — whether Mays in fact threatened Defendant Perala as alleged in the misconduct report, or whether, as Mays asserted during the hearing, he did no such thing but was subject to an assault by Perala — was the core inquiry of the misconduct hearing, thus fulfilling the second element necessary for preclusive effect. *Id*. at 913. In essence, at the hearing, Mays and Perala presented diametrically opposed accounts: Perala says that Mays threatened him; Mays says that he was keeping to himself, but was assaulted by Perala because of the lawsuits he (Mays) had filed. The Hearing Officer determined that Mays lacked credibility and found Mays guilty of threatening behavior. Logically, the Hearing Officer could not find Mays guilty while still leaving open the possibility that Perala slammed Mays's arm in the food tray slot. As noted above, Mays asserted that Perala slammed his arm in the food slot. The Hearing Officer did not credit Mays's account of the events of that day.

Third, Mays had a sufficient opportunity to litigate the dispute during the misconduct hearing including, as mentioned in Defendant Perala's motion, the opportunity to introduce Leroy Parker as a witness in his testimony to the Hearing Officer. (ECF No. 47, PageID.391.)

Finally, as in *Peterson*, findings that result from such a hearing would be given preclusive effect by the Michigan courts. *Id.* at 917; *see also Maben v. Thelen*, 887 F.3d 252, 259 (6th Cir. 2018), *reh'g denied* (Apr. 19, 2018) (applying the *Peterson* test in finding that a *minor* misconduct hearing does not have preclusive effect on later § 1983 litigation, as distinguished from a *major* misconduct hearing that can have preclusive effect). Thus, the undersigned concludes that the Hearing Officer's factual findings should be entitled to preclusive effect.

### Eighth Amendment Deliberate Indifference Claim

As mentioned above, the Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment further obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. at 102-04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Mays alleges that while Defendant Perala was conducting rounds on October 19, 2016, he began to experience symptoms of a grand mal seizure and asked Defendant Perala to find a doctor. Once again, Defendant Perala asserts that this incident never occurred, and that Mays cannot establish an issue of material fact as to whether it did. In response, Mays again points to medical records to support his allegations. (ECF Nos. 47-7, 47-11).

On October 21, 2016, Mays informed healthcare that he experienced a seizure and sustained a small abrasion, which was three millimeters in size and not tender, swollen or infected according to the medical provider. (ECF No. 47-11, PageID.535.) Then, on November 3, 2016, Mays returned to healthcare, complaining of a headache resulting from the seizure and showing concern about a potential brain bleed. (ECF No. 47-7, PageID.519.)

11

There does appear to be some conflicting information within the records. While Mays stated that he only experienced a small abrasion as the result of the seizure in the October 21, 2016 record, he stated that there had been a knot in his forehead causing his head to ache in the November 3, 2016 record. However, the undersigned recommends that these records are enough to establish an issue of material fact as to whether the incident occurred. As such, the Court must determine whether Mays has satisfied both the objective and subjective component of this Eighth Amendment claim as required under *Farmer v. Brennan*. 511 U.S. at 834.

To satisfy the objective component, Mays must allege that the medical need at issue was sufficiently serious. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). In *Newberry v. Melton*, the Sixth Circuit determined that where the plaintiff experienced grand mal seizures, "characterized by frequent, often lengthy, and aggressive convulsions," the condition was sufficiently obvious that an ordinary person would determine that the condition required medical treatment, thereby satisfying the objective component of the plaintiff's deliberate indifference claim without the need for verifying medical records. 726 F. App'x. 290, 295 (6th Cir. 2018). As such, the undersigned concludes that a genuine issue of material fact exists relating to the objective component of Mays's deliberate indifference claim.

Mays's claim, however, fails at the subjective component. The subjective component requires an inmate to show that prison officials have "a sufficiently

12

culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Defendant Perala argues that he could not have had the requisite intent for a claim of deliberate indifference because, even if Mays had informed Defendant Perala that he "felt a seizure coming on." (ECF No. 47*,* PageID.395.) Defendant's alleged statements show, at most, that he did not believe Mays. Defendant, citing *Bails v. Department of Corrections Michigan*, No. 2:09-cv-53, 2009 WL 910768 (W.D. Mich. Apr. 2, 2009), argues that disbelief is not enough to satisfy the subjective component of a deliberate indifference claim.

In *Bails*, as in this case, the plaintiff alleged that he told one of the defendants that he was experiencing a seizure but that the defendant did not alert medical personnel. *Id*. at *3. According to this Court, the fact that the plaintiff told the defendant he was experiencing a seizure and the defendant did not alert medical professionals did not support an inference of deliberate indifference on the part of the defendant, but rather an inference of disbelief. *Id.* As such, the Court dismissed the case for failure to state a claim. *Id*. The Court in *Bails* determined that, accepting all of the allegations in the plaintiff's complaint as true, the plaintiff failed to state a

13

claim of deliberate indifference. For the same reason, the undersigned concludes that, in the absence of evidence regarding Defendant's intent beyond the allegations in his complaint, there is no issue of material fact regarding the subjective component of Mays's deliberate indifference claim.

### First Amendment Retaliation Claim

In his retaliation claim, Mays alleges that Defendant Perala took three adverse actions against him in retaliation for a lawsuit that Mays filed against another prison official. First, Mays claims that Defendant Perala slammed his arm in the food tray slot of his door in retaliation for his filing a lawsuit. Second, Mays alleges that Defendant Perala was deliberately indifferent to his serious medical needs in retaliation for the lawsuit. And finally, Mays claims that Defendant Perala filed a false Class I misconduct against him.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish: (1) that he was engaged in protected conduct; (2) that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendant agrees that filing a federal lawsuit constitutes protected conduct. (ECF No. 47, PageID.397.) However, Defendant contends that there is insufficient evidence of any adverse action against Mays and no evidence that any action by Perala was motivated by the Mays's lawsuit against Defendant's colleague. (*Id.*)

As explained above, the undersigned concludes that there are no genuine issues of material fact as to Mays's Eighth Amendment excessive force and deliberate indifference claims. This conclusion would logically foreclose Mays's retaliation claim based on these Eighth Amendment violations as well. That leaves Mays's claim that Perala filed a false Class I misconduct against him in retaliation for his filing a lawsuit. The undersigned concludes that the factual findings of the Hearing Officer in Mays's Class I misconduct hearing bar this last retaliation claim. As explained above, the Hearing Officer credited Perala's account and rejected Mays's version of events. This conclusion is entitled to preclusive effect under the *Peterson* test. *See Maben*, 887 F.3d 259-63 (rejecting the "checkmate" doctrine, but recognizing that, under *Peterson*, factual findings in Class I misconduct hearings may be given preclusive effect). Thus, Mays is precluded from arguing that Perala's misconduct report was false, which eliminates the final aspect of Mays's retaliation claim.[1]

---

[1] It should also be noted that the Hearing Officer's conclusions undercut the required causal connection between the adverse action and the protected conduct. The Hearing Officer explained as follows:

> [G]rievances and lawsuits are not uncommon in a level five segregation unit. It seems unlikely that the officer would know, much less care, about a lawsuit filed against another officer. . . Reporting staff member factual and is credible as to what occurred.

15

## Qualified Immunity

Defendant also seeks summary judgment based on qualified immunity. Government officials, performing discretionary functions, are generally shielded from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232-233. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* Because the undersigned concludes that there is no genuine issue of material fact as

to any of Mays's claims, the undersigned also recommends that the Court rule that Defendant Perala is entitled to qualified immunity.

## Recommendation

The undersigned concludes (1) that the factual findings reached by the Hearing Officer in Mays's Class I Misconduct hearing preclude Mays's Eighth Amendment excessive force claim, (2) that there is no genuine issue of material fact relating to the subjective component of Mays's Eighth Amendment deliberate indifference claim, and (3) as a result of these conclusions, that there is no genuine issue of material fact relating to Mays's retaliation claims.  Accordingly, the undersigned respectfully recommends that the Court grant Defendant Perala's motion for summary judgment.

NOTICE TO PARTIES: Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   August 5, 2019                         /s/ *Maarten Vermaat*
                                                 MAARTEN VERMAAT
                                                 U. S. MAGISTRATE JUDGE